**FILED**

**December 22, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 9:51 AM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | | |
|---|---|---|
| Willis Ray Babb, | ) | Docket No.: 2016-03-0095 |
| Employee, | ) | |
| v. | ) | |
| House Hasson Hardware Co., Inc., | ) | State File No.: 88593-2015 |
| Employer, | ) | |
| and | ) | |
| American Zurich Insurance Co., | ) | Judge Pamela B. Johnson |
| Carrier. | ) | |

## EXPEDITED HEARING ORDER
### *(Decision on the Record)*

This matter came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by Willis Ray Babb pursuant to Tennessee Code Annotated section 50-6-239 (2016). The parties submitted an Agreed Order Waiving In-person Hearing and Allowing Court to Make Decision upon Review of the File. The Court entered an Agreed Order and Docketing Notice on December 6, 2016, listing the documents agreed upon by the parties to for consideration.[1]

Upon review of this documentation, the Court finds it needs no additional information to determine whether Mr. Babb is likely to prevail at a hearing on the merits of the claim. Accordingly, pursuant to Tennessee Compilation Rules and Regulations 0800-02-21-.14(1)(c) (2016), the Court decides this matter upon review of the agreed documents.

The central legal issue is whether Mr. Babb is likely to prevail at a hearing on the merits in establishing that he suffered a left-knee injury arising primarily out of and in the course and scope of his employment with House Hasson, entitling him to medical benefits. For the reasons set forth below, the Court holds Mr. Babb came forward with sufficient evidence demonstrating he is likely to prevail at a hearing on the merits. Thus,

---

[1] Attached to this Order is a complete listing of the Technical Record and Exhibits agreed upon by the parties for consideration by this Court.

1

this Court concludes Mr. Babb is entitled to a panel of physicians in accordance with Tennessee Code Annotated section 50-6-204 (2016) for evaluation and treatment of his left-knee injury.

## History of Claim

A review of the written materials revealed the following facts. Mr. Babb, a forty-six-year-old resident of Knox County, Tennessee, worked for House Hasson as a truck driver/deliveryman. (T.R. 1, 3; Ex. 1.) On October 12, 2015, Mr. Babb made a delivery to Double J Supply in Lagrange, Georgia, and injured and broke two toes when a pallet-jack fell on his left foot. (Ex. 1.; Ex. 2, pp. 15-19.) On the same day, he reported the foot injury to his supervisor, Stacy Merrell. *Id.*

Upon his return home, Mr. Babb sought medical care at an urgent care facility. (Ex. 1; Ex. 2, pp. 20-22.) The urgent care provider instructed Mr. Babb to stay off the foot. *Id.* Mr. Babb took a week off work to heal. *Id.* House Hasson accepted the left-foot injury as compensable and provided authorized medical treatment. *Id.*

When Mr. Babb returned to work following his foot injury, he experienced pain in his left knee on his first delivery that day. (Ex. 1; Ex. 2, pp. 22-24.) He initially associated his knee pain with the change in his walk as he tried to avoid placing weight on his left foot and hoped his knee pain would subside as his foot healed. (Ex. 1; Ex. 2, pp. 76-77; Ex. 3, p. 7-8.) He mentioned pain in his knee to Mr. Merrell during the week he returned following his toe injury. (Ex. 2, p. 53; Ex. 4, p. 5, 7.) During a Driver's Meeting in December, Mr. Babb advised Mr. Merrell that his knee continued to bother him. *Id.*

During this time, Mr. Babb was scheduled to see his primary care physician, Dr. Brad Flaming, for unrelated health conditions. (Ex. 2, pp. 54-55.) On December 4, Dr. Flaming noted that Mr. Babb complained of bilateral knee pain, with left-knee pain for six to eight months and right knee pain for three to four months, and further noted no fall or known injury.[2] (Ex. 7.) Mr. Babb testified he told Dr. Flaming about the pallet-jack incident and how he thought his gait following the toe injury may have caused his left-knee pain, but he could not explain what Dr. Flaming meant by no fall or known injury. (Ex. 2, pp. 55, 59.) Dr. Flaming obtained x-rays and diagnosed left-knee tendinitis. (Ex. 7.)

Mr. Babb returned to see Dr. Flaming on December 29 with continued knee pain as well as other unrelated complaints. (Ex. 7.) During the office visit, Dr. Flaming administered a cortisone injection into the knee. *Id.* Dr. Flaming diagnosed pain in both

---

[2] Mr. Babb testified that he called Dr. Flaming's office and reported the discrepancy in the history concerning the onset of his symptoms. (Ex. 2, p. 56-58.) He testified Dr. Flaming's office corrected the timeline. The correction is located at the end of the December 29, 2015 office note contained in Exhibit 7.

knees and osteoarthritis of the knee.[3]  *Id.*  Dr. Flaming further noted he reviewed an old x-ray, which showed "degenerative changes in the knee."[4]

Mr. Babb's left-knee pain failed to improve and he subsequently developed buckling in his knee.  In his affidavit, Mr. Babb stated, on January 8, 2016, he realized that he seriously injured his left knee when it could no longer hold his bodyweight and buckled underneath him.  (Ex. 1.)  In his deposition, Mr. Babb stated, on the Tuesday night/Wednesday morning following a left-knee cortisone injection from Dr. Flaming, he stepped up on a pallet at his first stop and his left knee buckled.  (Ex. 2, pp. 30-40.)

By affidavit, he indicated he informed Mr. Merrell the following day that he needed to see a doctor about his left-knee injury.  (Ex. 1; Ex. 2, pp. 39-41.)  By deposition, he testified he talked to Mr. Merrell on the following Sunday to request medical treatment for his knee.  (Ex. 2, pp. 37-41.)  Mr. Babb testified he did not discuss specifics about his knee with Mr. Merrell during the Sunday telephone conversation because "[Mr. Merrell] already knew I had something wrong with my knee."  (Ex. 2, p. 44, 53.)  Mr. Babb explained in his deposition that following the Tuesday night/Wednesday morning left-knee buckling event, he was at home on Friday, seated in the floor, and "It was just a lot of pain.  Because I was just trying to get up and I actually put weight on it."  (Ex. 2, pp. 50-51.)

Dr. Flaming subsequently ordered a left-knee MRI, which Mr. Babb completed on January 28.  (Ex. 7.)  Dr. Daniel A. Baker interpreted the MRI, which showed a medial meniscus tear, moderate to severe chondromalacia, and moderate joint effusion with numerous loose bodies present.  *Id.*

Following the MRI, Mr. Babb returned to Dr. Flaming on February 8 for an unrelated health condition.  (Ex. 7.)  During this visit, Mr. Babb requested a return to work despite his left-knee meniscal tear found on the MRI.  *Id.*  Dr. Flaming agreed to release Mr. Babb back to work despite the tear.  *Id.*

On April 4, House Hasson's carrier issued a Notice of Denial of Claim for Compensation, noting, "The right knee condition complaints are not causally related to the compensable injuries sustained to the right 2nd and 3rd toes claim."[5]  (Ex. 8.)

---

[3] The December 29, 2015 office note does not specify the involved knee with the "osteoarthritis of knee" diagnosis.

[4] The December 29, 2015 office note does not specify the involved knee when discussing the "old x-ray" and the "degenerative changes in the knee" shown.

[5] For purposes of this Order, the Court presumes House Hasson meant to reference a "left" knee condition, which is the disputed issue in this case, when it mistakenly referenced a "right knee condition" and "compensable injuries sustained to the right 2nd and 3rd toes claim" in its Notice of Denial of Compensation.

## Findings of Fact and Conclusions of Law

The following legal principles govern this case. Because this case is in a posture of an Expedited Hearing, Mr. Babb must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2016). This lesser evidentiary standard does not relieve Mr. Babb of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an Expedited Hearing, but "allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

With the above principles in mind, an injury must arise primarily out of and occur in the course and scope of the employment to be compensable under the Workers' Compensation Law. *See* Tenn. Code Ann. § 50-6-102(14) (2016). The term "injury" is defined as "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.* For an injury to be accidental, it must be "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(14)(A) (2016).

In the present case, Mr. Babb identified a specific incident, or set of incidents, identifiable by time and place that occurred while he performed his job duties at House Hasson. On October 12, 2015, Mr. Babb made a delivery to Double J Supply in Lagrange, Georgia, and broke two toes when a pallet-jack fell on his left foot. When Mr. Babb returned to work following his foot injury, he experienced pain in his left knee on his first delivery that day. He initially associated his knee pain with the change in his walk as he tried to avoid placing weight on his left foot and hoped his knee pain would subside as his foot healed. Mr. Babb's knee pain failed to improve and he subsequently developed buckling in his knee. On the Tuesday night/Wednesday morning following a cortisone injection from Dr. Flaming, he stepped up on a pallet at his first stop in Samson, Alabama, and his knee buckled. This Court finds Mr. Babb came forward with sufficient evidence from which this Court can determine that he is likely to prevail at a hearing on the merits on establishing a specific incident, or set of incidents, identifiable by time and place.

The issue then turns to whether Mr. Babb's left-knee injury arose primarily out of and in the course and scope of employment. In *McCord*, the Workers' Compensation Appeals Board analyzed the burden of proof required at the Expedited Hearing stage and concluded:

4

We find, therefore, that an employee need not prove each and every element of his or her claim by a preponderance of the evidence at an expedited hearing to be entitled to temporary disability or medical benefits, but must instead present evidence sufficient for the trial court to conclude that the employee would likely prevail at a hearing on the merits in accordance with the express terms of section 50-6-239(d)(1). A contrary rule would require many injured workers to seek out, obtain, and pay for a medical evaluation or treatment before his or her employer would have any obligation to provide medical benefits. The delays inherent in such an approach, not to mention the cost barrier for many workers, would be inconsistent with a fair, expeditious, and efficient workers' compensation system. *See* Tenn. Code Ann. § 4-3-1409(b)(2)(A) (2014). Moreover, we note that since an expedited hearing is interlocutory in nature, either party may present additional evidence at the final compensation hearing and ask the trial court to reverse or modify the interlocutory order.

*Id.* at *4.

In *McCord*, the Workers' Compensation Appeals Board further analyzed what act or event triggers an employer's responsibility to provide a panel of physicians. Specifically, the Workers' Compensation Appeals Board held, "[M]ere notice of an alleged workplace accident, in and of itself, does not trigger an employer's duty to provide medical benefits in every case, without regard to the particular circumstances presented." *Id.* at *7. The employee offered testimony without contradiction that she felt symptoms while lifting boxes, which resulted in two emergency room visits with similar complaints, and a report of injury to the employer. *Id.* at *15-17. The Appeals Board concluded in *McCord*, "Employee's testimony, the exhibits, and the record as a whole support[ed] the trial court's determination that Employee [was] entitled to a panel of physicians."

Here, this Court must determine whether Mr. Babb is likely to prevail at a hearing on the merits on the issue of entitlement to medical benefits, specifically a panel of physicians. Mr. Babb testified he felt left-knee pain as soon as he returned to work following his October 12, 2015 left foot incident. He further indicated he reported his knee symptoms to his supervisor, Mr. Merrell, who confirmed learning of the knee pain at that time. Both Mr. Babb and Mr. Merrell attributed Mr. Babb's knee pain to his irregular gait due to his attempt to avoid or limit weight bearing on his injured foot. Mr. Babb continued to experience knee pain and mentioned his knee complaints to Dr. Flaming in December. Mr. Babb testified his knee buckled when he stepped on a pallet the Tuesday night/Wednesday morning after Dr. Flaming administered a cortisone injection. Following this incident, Mr. Babb requested medical treatment from his supervisor, Mr. Merrell, who again confirmed the report of a knee incident and request for medical treatment. Considering the testimony of Mr. Babb and Mr. Merrell and the

5

evidence as a whole, this Court holds that Mr. Babb presented sufficient evidence demonstrating that his is likely to prevail at a hearing on the merits on entitlement to a panel of orthopedic physicians. Accordingly, his request for medical benefits is granted at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1.  House Hasson shall provide Mr. Babb with medical treatment for his left foot and left knee injuries made reasonably necessary by the October 12, 2015 injury and in accordance with Tennessee Code Annotated section 50-6-204 (2015). House Hasson shall provide Mr. Babb with a panel of orthopedic physicians from which he may select an authorized treating physician.

2.  This matter is set for a Scheduling Hearing on **February 17, 2017,** at **9:30 a.m. Eastern Time.** The parties must call 865-594-0091or 855-543-5041 toll free to participate in the Initial Hearing. Failure to appear by telephone may result in a determination of the issues without your further participation.

3.  Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit by email at WCCompliance.Program@tn.gov or by telephone at (615) 253-1471 or (615) 532-1309.

**ENTERED this the 22nd day of December, 2016.**

**HON. PAMELA B. JOHNSON**
**Workers' Compensation Judge**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.00. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a

statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Technical Record:
- Petition for Benefit Determination, filed February 1, 2016;
- Petition for Benefit Determination, filed June 16, 2016;
- Dispute Certification Notice, filed September 28, 2016;
- Notice of Written Objection to Contents of Dispute Certification Notice and Inclusion of Identification of Other Issues to be Addressed by the Judge, filed September 28, 2016;
- Request for Expedited Hearing, filed October 3, 2016;
- Brief in Support of Employee's Request for Expedited Hearing, filed October 3, 2016;
- Position Statement in Opposition to Employee's Request for Expedited Hearing, filed October 4, 2016;
- Subpoena, filed November 10, 2016; and
- Agreed Order Waiving Inperson Hearing and Allowing Court to Make Review-of-the-File Determination, filed November 21, 2016;
- Agreed Order, entered December 5, 2016;
- Agreed Order and Docketing Notice for a Review-of-the-File Determination, entered December 6, 2016; and
- Agreed Order, entered December 8, 2016.

The Court did not consider attachments to Technical Record filings unless the parties or their counsel stipulated to their admissibility and listed them below as an Exhibit. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

Exhibits:
- EXHIBIT 1: Affidavit of Willis Ray Babb;
- EXHIBIT 2: Deposition and attached Exhibits of Willis Ray Babb;
- EXHIBIT 3: Declaration and attached Exhibits of Stacy Merrell;
- EXHIBIT 4: Deposition of Stacy Merrell;
- EXHIBIT 5: Affidavit and attached Exhibits of Barbara Martinez;
- EXHIBIT 6: Declaration and attached Exhibits of Betty Kidd;
- EXHIBIT 7: Medical Records of Dr. Brad Flaming, Emory Family Practice, for dates of service: December 4, 2015; December 29, 2015; MRI of January 28, 2016; and February 8, 2016; and
- EXHIBIT 8: Notice of Denial of Claim for Compensation, Form C-23.

8

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 22nd day of December, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Timothy Roberto, Esq., Employee's Counsel | | | X | troberto@brownandroberto.com |
| Brett Burrow, Esq., Employer's Counsel | | | X | bburrow@burrowlee.com |


_____

**PENNY SHRUM, Court Clerk**
**WC.CourtClerk@tn.gov**